[No. D008108. Fourth Dist., Div. One. Apr. 18, 1990.]

RANCHO SANTA FE PHARMACY, INC., Plaintiff and Respondent, v.
JOHN SEYFERT et al., Defendants and Appellants.

**COUNSEL**

Philip Burkhardt and Carl A. Larson for Defendants and Appellants.

Hinchy, Witte, Wood, Anderson & Hodges and Joe B. Cordileone for Plaintiff and Respondent.

OPINION

**WIENER, J.**—Defendants John and Doris Seyfert, principals and sole shareholders of Village Pantry, Inc., appeal from a judgment holding them personally liable on their guaranty of their corporation's promissory note. We conclude the court's incorrect determination that the presumption of consideration under Civil Code section 1614[1] affects the burden of proof instead of the burden of producing evidence resulted in erroneous jury instructions leading to prejudicial error. We therefore reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In June 1981 plaintiff Rancho Santa Fe Pharmacy, Inc. (RSF Pharmacy), sold its successful liquor store to Village Pantry, Inc., for $170,000. Of the total purchase price $120,000 was in the form of a corporate promissory note. Although the escrow instructions containing the sale terms did not require the Seyferts to personally guaranty Village Pantry's promissory note, they nonetheless signed a guarantee before close of escrow.

For a number of reasons the business failed and Village Pantry went into bankruptcy. RSF Pharmacy successfully sued the Seyferts on their guaranty, obtaining a jury verdict of $266,749.08, representing the note's unpaid principal balance, accrued interest and attorney's fees. The Seyferts appeal.

DISCUSSION

I

At trial the parties to this case were well aware the crucial issue was whether the Seyferts' personal guaranty was supported by consideration. They knew that where a promissory note is given for consideration, a later guaranty of that note lacks consideration and cannot be enforced. (*Rusk* v. *Johnston* (1937) 18 Cal.App.2d 408, 409 [63 P.2d 1167].) When, however, the guaranty is made coincidentally with the promissory note, the guaranty is supported by the same consideration as the note and is enforceable. (*Mortgage Guarantee Co.* v. *Chotiner* (1936) 8 Cal.2d 110, 112 [64

---

[1] All statutory references are to the Civil Code unless otherwise specified. Section 1614 provides: "A written instrument is presumptive evidence of a consideration."

P.2d 138, 108 A.L.R. 1080].) Accordingly, RSF Pharmacy's position at trial was that the personal guaranty in this case was contemplated by the initial transaction. The Seyferts categorically disagreed, saying the personal guaranty was merely an afterthought which they were pressured into signing at the last moment in order to close escrow.

The Seyferts argue there was a substantial likelihood the jury's finding of consideration was not based on the jury's accepting RSF Pharmacy's version of the facts. They explain the jury could have decided against them because of erroneous and conflicting instructions which had their source in the court's incorrect interpretation of section 1614. They say this error permitted the jury to find for RSF Pharmacy even though RSF Pharmacy failed to establish consideration for the guaranty. The reason for this is as follows.

At trial RSF Pharmacy's introduction of the Seyferts' written personal guaranty into evidence triggered section 1614's presumption of consideration. Over the Seyferts' objection the court ruled the presumption was one affecting the burden of proof rather than merely producing evidence. Consistent with this ruling the court gave two instructions requiring the Seyferts to prove the nonexistence of consideration. The first instruction said: "The presumption [of consideration under section 1614] is rebutted if there is a *preponderance of the evidence* showing that there was no consideration for the personal guarantee. [¶] The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it, in this case the defendants." (Italics supplied.)

The court summarized the Seyferts' burden: "The defendants have the burden of proving by a preponderance of the evidence the following: [¶] One. That the personal guarantees are not supported by consideration; . . ."

The court also gave another instruction relating to consideration. This instruction, contrary to the foregoing instructions, told the jury that it was RSF Pharmacy which had the burden of proving consideration for the guaranty. This conflicting instruction stated: "The plaintiff has offered testimony regarding the existence of a prior or contemporaneous agreement for [the] personal guarantee which was alleged to be made between the parties before or at the time of the signing of [the initial agreement for the sale of the business]. The defendants, on the other hand, dispute that such an agreement was ever made. *The plaintiff has the burden to prove the existence of the prior or contemporaneous agreement by a preponderance of the evidence.* (Italics supplied.)

In sum, these instructions placed the burden of proof to establish consideration on RSF Pharmacy while simultaneously placing the burden on the Seyferts to prove an absence of consideration. The jury was thus presented with a dual analytical track on which it could reach its decision. The jury could find in favor of RSF Pharmacy because it determined there was only one transaction making the personal guaranty enforceable. Alternatively the jury could find in favor of RSF Pharmacy solely because it determined the Seyferts had failed to establish a lack of consideration.

There cannot be conflicting burdens of proof on the same issue. Obviously one of the instructions was wrong. In light of the jury verdict the error becomes harmless, however, if the court properly placed the burden on the Seyferts to prove a lack of consideration. This question requires us to decide whether the presumption of section 1614 affects the burden of proof or the burden of producing evidence.

## II

" 'Burden of proof' means the obligation of a party to establish by evidence a *requisite degree of belief* concerning a fact in the mind of the trier of fact or the court." (Evid. Code, § 115; italics supplied.) The burden of producing evidence is "the obligation of a party to introduce evidence *sufficient to avoid a ruling against him* on the issue." (Evid. Code, § 110; italics supplied.)

■ Initially these burdens coincide. The party having the burden of proof must offer evidence so that the trier may have a basis for finding in his favor. (9 Wigmore, Evidence (Chadbourn ed. 1981) § 2487, p. 293.) During the course of the trial, however, the burden of producing evidence "may shift from one party to another, irrespective of the incidence of the burden of proof. For example, if the party with the initial burden of producing evidence establishes a fact giving rise to a presumption, the burden of producing evidence will shift to the other party, whether or not the presumption is one that affects the burden of proof." (See Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) § 550, p. 232.)

■ In this case, it was RSF Pharmacy's obligation to establish the Seyferts' guaranty was valid and enforceable. To accomplish this RSF Pharmacy produced the written guaranty itself. At that point section 1614's presumption of consideration worked in favor of RSF Pharmacy.

In making its ruling that the presumption affected the burden of proof, the court relied on *Niederer v. Ferreira* (1983) 150 Cal.App.3d 219 [197 Cal.Rptr. 685]. *Niederer,* however, did not analyze the issue, merely citing

section 1615[2] and *Boswell* v. *Reid* (1962) 199 Cal.App.2d 705 [19 Cal.Rptr. 29].

Admittedly section 1615's heading contains the term, "burden of proof." These words, however, do not appear in the body of the statute itself which contains the more ambiguous phrase, "burden of showing." Because section headings alone are not dispositive, (*People* v. *Berger* (1955) 131 Cal.App.2d 127, 129 [280 P.2d 137]), and the *Niederer* court's conclusionary language is not helpful, further analysis of section 1614's presumption is necessary.

An additional reason for our further inquiry is that *Boswell* v. *Reid, supra,* did not interpret section 1614's effect. In stating "[t]he burden of proving failure of consideration as a matter of defense is upon the party who asserts it, . . ." (199 Cal.App.2d 705, 713), *Boswell* was construing a later-repealed section of the Civil Code relating to negotiable instruments. Arguably, public policy may require the presumption of consideration be given greater weight where negotiable instruments are involved than where agreements like the one before us are at issue. Indeed, former Code of Civil Procedure section 1963 set forth two distinct presumptions of consideration, one relating to negotiable instruments in particular (§ 1963(21)), the other to contracts generally (§ 1963(39)). Section 1963(21) was discontinued in favor of the Uniform Commercial Code provisions regarding negotiable instruments, while section 1963(39) was abandoned as duplicative of section 1614. (See 1 Witkin, Cal. Evidence (3d ed. 1986) § 216, p. 172.) Accordingly we are not persuaded that the *Boswell* declaration applies to this case.

We analyze section 1614's presumption consistent with the provisions and comments contained in the later enacted Evidence Code. Although the Evidence Code was not adopted until 1965, the common law recognized the difference between the burdens of producing evidence and of proof. More than 50 years ago the California Supreme Court confirmed one party might have the burden of proof on an issue for which the other party has the burden of producing evidence. (*People* v. *Quarez* (1925) 196 Cal. 404, 409 [238 P. 363].) The courts tended to apply the burdens inconsistently, however, and the drafters of the Evidence Code therefore determined that a statutory formula was necessary to clarify the law and to promote uniform application of the burdens. (See Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) § 601, p. 242.)

---

[2] Prefaced by the heading "Burden of proof to invalidate sufficient consideration," the text of section 1615 provides: "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it."

Evidence Code section 601 classifies rebuttable presumptions as affecting either the burden of producing evidence or the burden of proof. Evidence Code sections 603 and 605 provide guidance for determining which burden is affected by a particular presumption.

■ Evidence Code section 603 defines a presumption affecting the burden of production as one "established to implement no public policy other than to facilitate determination of the particular action in which the presumption is applied." As the Law Revision Commission's comments to section 603 make clear, presumptions affecting the burden of producing evidence "are not expressions of policy; they are expressions of experience. They are intended solely to eliminate the need for the trier of fact to reason from the proven or established fact to the presumed fact and to forestall argument over the existence of the presumed fact when there is no evidence tending to prove the nonexistence of the presumed fact." (See Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) § 603, p. 247.)

Thus, when the party against whom such a presumption operates produces some quantum of evidence casting doubt on the truth of the presumed fact, the other party is no longer aided by the presumption. The presumption disappears, leaving it to the party in whose favor it initially worked to prove the fact in question.

■ Evidence Code section 605 defines the presumption affecting the burden of proof as one "established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied, such as the policy in favor of establishment of a parent and child relationship, the validity of marriage, the stability of titles to property, or the security of those who entrust themselves or their property to the administration of others."

As commentators have recognized, presumptions backed by policy concerns are justifiably given greater weight under our state's scheme. "Certainly if a presumption is not based on probability, but is based solely on social policy, there may be more, and not less, reason to preserve it in the face of contrary proof. A presumption based on social policy may need an extra boost to ensure that the policy is not overlooked in the face of some explanation given by the opponent." (Broun, *The Unfulfillable Promise of One Rule For All Presumptions* (1984) 62 N.C. L. Rev. 697, 703.)

Despite the laudable efforts of the Legislature to assist in classifying the burdens, determining which burden is involved is, to say the least, often confusing. As the Law Revision Commission noted in commenting on section 605, the burden of proof, like the burden of production, is frequently

"designed to facilitate determination of the action in which [it is] applied. Superficially, therefore, such presumptions may appear merely to be presumptions affecting the burden of producing evidence. What makes a presumption one affecting the burden of proof is the fact that there is always some further reason of policy for the establishment of the presumption." (See Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) § 605, p. 250.)

In *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261], the California Supreme Court acknowledged the difficulty of classifying the presumption of retaliation flowing from a landlord's eviction of a tenant within six months of the tenant's exercise of rights under an applicable rent control ordinance. (37 Cal.3d 644, 696.) Ultimately the policies in favor of encouraging tenants to assert their rights and against retaliatory evictions helped persuade the court that the presumption was one affecting the burden of proof. (37 Cal.3d at p. 697.)

Although the Legislature has determined by statute which particular burdens are affected by a number of different presumptions (in Evid. Code §§ 630 et seq. and 660 et seq.), the presumption under Civil Code section 1614 has not been so classified.

■■■ We must therefore determine whether a public policy concern underlies section 1614's presumption of consideration. To the best of our knowledge no California case identifies such a public policy concern. The lack of authority is not completely surprising. We have difficulty conceiving of any. We think section 1614's presumption exists because the Legislature probably thought it was experientially sound. It is logically founded on the recognition that, in most cases, where there is a writing, there is consideration. Section 1614 therefore merely relieves the party producing the written document of the need to make the initial showing on what in most cases will be a nonissue, i.e., consideration.

We also note section 1614 involves the debtor-creditor relationship. This fact is significant since the Legislature has determined a number of presumptions arising from the debtor-creditor relationship affect the burden of producing evidence. For example, the presumption that money delivered to a person was owed him or her is one affecting the burden of production. (Evid. Code, § 631.) Also affecting this burden is the presumption that an obligation in the creditor's possession has not been paid. (Evid. Code, § 635.) In cases giving rise to these presumptions, then, the creditor retains the burden of proving the presumed fact when the debtor produces sufficient evidence to call the validity of the presumption into question.

██ ██ Based on the foregoing we conclude the presumption of consideration under section 1614 affects the burden of producing evidence and not the burden of proof. In light of this conclusion, we hold the jury instructions placing the burden on the Seyferts to prove a lack of consideration were incorrect. Although the jury may have followed the instruction requiring RSF Pharmacy to prove the existence of a contemporaneous agreement, there is an equal probability the jury followed the erroneous instruction. In such circumstances we cannot say the instructional error was harmless and accordingly must reverse the judgment.

## DISPOSITION

The judgment is reversed.

Kremer, P. J., and Huffman, J., concurred.

On May 16, 1990, the opinion was modified to read as printed above.