FILED

OCT 13 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   AZ-15-1396-FLJu |
| | ) | |
| RODNEY FRANK KRENZ, | ) | Bk. No.   2:10-bk-04317-DPC |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TRACY A. NEUMAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| RODNEY FRANK KRENZ, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Submitted Without Argument
on September 23, 2016

Filed – October 13, 2016

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Daniel P. Collins, Chief Bankruptcy Judge, Presiding

_____

Appearances:   Appellant Tracy A. Neuman, pro se, on brief; David Allegrucci on brief for Appellee Rodney Frank Krenz.

_____

Before: FARIS, LAFFERTY, and JURY, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Appellant Tracy A. Neuman appeals the bankruptcy court's orders (1) allowing chapter 13[1] debtor Rodney Frank Krenz to amend his schedules to include debt owed to her and extending the time for her to file a proof of claim and (2) overruling Ms. Neuman's objection to discharge. We hold that Ms. Neuman's appeal of the first order was untimely and, in any event, the court did not violate Ms. Neuman's due process rights. We also hold that the court did not err in rejecting Ms. Neuman's argument that Mr. Krenz defrauded the court. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND[2]

This case arises out of a contentious divorce between Ms. Neuman and Mr. Krenz. As the bankruptcy court noted, the parties have acted "equally horribl[y]" toward each other. This mutual hatred affected not just the divorce proceedings, but also this bankruptcy proceeding.

Ms. Neuman and Mr. Krenz were married in 2006. The couple owned a number of pieces of real property, but resided together at McNair Drive in Tempe, Arizona (the "Marital Residence").

In 2007, at Mr. Krenz's request, Ms. Neuman took out a home

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

2

equity loan on her solely-owned real property and loaned the $100,000 proceeds to Mr. Krenz. Mr. Krenz routinely made monthly payments of $600 to Ms. Neuman.

In February 2010, Mr. Krenz filed his chapter 13 bankruptcy petition. He did not include the debt owed to Ms. Neuman in his schedules. Ms. Neuman did not receive formal notice of the bankruptcy, but she said that she was aware that he had filed his petition. The court confirmed Mr. Krenz's chapter 13 plan, which provided for payments over a sixty-month period. Mr. Krenz continued to make the $600 monthly payments to Ms. Neuman postconfirmation.

While his chapter 13 case was still pending, in February 2013, Mr. Krenz filed for divorce from Ms. Neuman. In the months that followed, Mr. Krenz tried to convince Ms. Neuman to agree to sell their Marital Residence. When Ms. Neuman refused - and outright threatened to obstruct the sale - Mr. Krenz obtained an order of protection against Ms. Neuman. As a result, Mr. Krenz obtained exclusive use of the Marital Residence. Ms. Neuman contended that Mr. Krenz used the order of protection in an attempt to strong-arm her to sell the Marital Residence.

Shortly thereafter, in January 2014, Mr. Krenz ceased making monthly payments to Ms. Neuman for the loan obligation.

In August 2014, seven months before the completion of his chapter 13 plan payments, Mr. Krenz amended his schedules to include the debt he owed to Ms. Neuman. Ms. Neuman received notice of the amendment and objected to the amendment by letter to the bankruptcy court dated August 19, 2014. She argued that Mr. Krenz should not be allowed to discharge the debt. She

3

stated that he was hiding money and trying to avoid the loan obligation.

The court held a hearing on the objection. Ms. Neuman acknowledged that she had actual knowledge of Mr. Krenz's bankruptcy filing in 2010. At the conclusion of the hearing, the court overruled Ms. Neuman's objection to the amendment. However, the court allowed Ms. Neuman to file a claim against Mr. Krenz's estate. The court issued court minutes ("Minutes") memorializing its ruling. Ms. Neuman timely filed her proof of claim.

Months later, in June 2015, Ms. Neuman wrote a letter to the bankruptcy court alleging that Mr. Krenz had been "playing the system" and making himself look "poor on paper." She stated that she was suffering financial hardship due to Mr. Krenz's failure to make payments on the $100,000 loan and that he was attempting to avoid the loan obligation by belatedly adding it to his schedules. She also argued that he took five or six vacation trips each year.

Ms. Neuman additionally alleged that Mr. Krenz had secretly purchased real property at East Vinedo Drive in Tempe, Arizona (the "Vinedo Property") around the time he had filed for divorce. All documents indicated that Mr. Krenz's sister, Kerry Arent, purchased the Vinedo Property in March 2013. However, Ms. Neuman contended that Ms. Arent conspired with Mr. Krenz to purchase the Vinedo Property in her name on behalf of Mr. Krenz. Ms. Neuman alleged that Mr. Krenz began to "secretly rehab" the Vinedo Property without her knowledge and spent thousands of dollars on furnishings.

The bankruptcy court held a hearing regarding Ms. Neuman's allegations. The court ordered Ms. Neuman to provide Mr. Krenz with the evidence substantiating her claims.

On September 15, 2015, the court again held a hearing on Ms. Neuman's allegations. Mr. Krenz represented that he had assembled all of the necessary information to refute Ms. Neuman's allegations and provided it to the chapter 13 trustee ("Trustee"). The Trustee reported that he had not uncovered any indicia of fraud or bad faith; there was only evidence of "a painful divorce, but no evidence of fraud." Ms. Neuman argued at length about Mr. Krenz's allegedly bad or fraudulent behavior, including the alleged scheme to bar her from the Marital Residence while he secretly acquired the Vinedo Property for himself. The court decided to treat her letter as an objection to discharge and set an evidentiary hearing on October 15, 2015 (the "Evidentiary Hearing").

Ms. Neuman has not provided the Panel with the complete transcript of the October 15 Evidentiary Hearing. However, we know that at the conclusion of Ms. Neuman's evidence, Mr. Krenz moved for a directed verdict. The court granted the motion and made a detailed oral ruling. The court noted the vitriol between the parties but did not find any bad faith or fraud. The court accepted the testimony of Ms. Arent that she purchased the Vinedo Property for use as a vacation home in the winter and that she allowed Mr. Krenz to stay there for free during his divorce and bankruptcy proceedings.

Regarding Mr. Krenz's allegedly extravagant travel, the court found that the costs were "fairly nominal" and that

5

Mr. Krenz had adequately explained the trips. The court also considered Ms. Neuman's newly-raised argument regarding the proceeds of a check paid to Ms. Neuman and deposited in a joint bank account and later loaned to Mr. Krenz, but held that it constituted a loan and not a misappropriation or theft.

Regarding Ms. Neuman's allegation that Mr. Krenz schemed to evict her from the Marital Residence to force her to agree to sell the house, the court noted that "it wouldn't be at all surprising to me that it is exactly what he planned and exactly what he concocted as a way of getting to Ms. Newman [sic] because that's in effect the course of dealing between the parties and how they treated each other so horribly." Nevertheless, the court determined that it did not need to make any finding on this matter, because it did not concern the discharge or the denial thereof.

Similarly, the court made no finding regarding whether Mr. Krenz perjured himself in state court, because it was not relevant to the bankruptcy proceedings.

In conclusion, the court stated that Ms. Neuman did not satisfy "her burden of proving by a preponderance of the evidence that he has defrauded the Court, that he has stolen assets, that [he] has hidden assets, [or] that he has perjured himself in this bankruptcy proceeding." The court entered an order ("Order") denying Ms. Neuman's objection to discharge on November 10, 2015.

On November 12, Ms. Neuman appealed both the September 25, 2014 Minutes denying the objection to amendment and the November 10, 2015 Order denying the objection to discharge.

6

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). Subject to our discussion below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court violated Ms. Neuman's due process rights when it allowed Mr. Krenz to amend his schedules.

(2) Whether the bankruptcy court erred when it overruled Ms. Neuman's objection to Mr. Krenz's discharge based on fraud and bad faith.

## STANDARDS OF REVIEW

"Whether an appellant's due process rights were violated is a question of law we review de novo." DeLuca v. Seare (In re Seare), 515 B.R. 599, 615 (9th Cir. BAP 2014) (citing Miller v. Cardinale (In re DeVille), 280 B.R. 483, 492 (9th Cir. BAP 2002), aff'd, 361 F.3d 539 (9th Cir. 2004)); see also HSBC Bank USA, Nat'l Ass'n v. Blendheim (In re Blendheim), 803 F.3d 477, 497 (9th Cir. 2015) ("Whether adequate notice has been given for the purposes of due process is a mixed question of law and fact that we review de novo."). "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

The court's directed verdict is now referred to as a judgment based on partial findings under Civil Rule 52, made

7

applicable through Rule 7052.[3]  "The court's findings of fact under [Civil Rule] 52(c) are reviewed for clear error, while its conclusions of law are reviewed de novo."  Kuan v. Lund (In re Lund), 202 B.R. 127, 129 (9th Cir. BAP 1996).

## DISCUSSION

**A.  The bankruptcy court did not deny Ms. Neuman due process.**

Ms. Neuman first argues that she was denied due process when the court belatedly allowed Mr. Krenz to amend his schedules to add the debt owed to Ms. Neuman, because she did not have an opportunity to object to the confirmation of Mr. Krenz's plan or object to the dischargeability of her debt.  We disagree.

**1.  Ms. Neuman's appeal of the September 25, 2014 Minutes is untimely.**

As an initial matter, Mr. Krenz argues that Ms. Neuman's appeal of the September 25, 2014 Minutes was untimely, because she did not appeal the ruling until November 12, 2015.  He argues that the Minutes were an immediately appealable final order and that its finality was not dependent upon any other event.  We agree.

The Ninth Circuit has advised that "[a] disposition is final

---

[3] This Panel has previously clarified that:

Motions for directed verdicts are now called motions for judgment as a matter of law and are governed by Civil Rule 50.  This rule applies in bankruptcy cases only if the matter is tried before a jury.  Because this was a bench trial, [the] motion was a motion for a judgment on partial findings under Rule 7052(c), which incorporates Civil Rule 52(c).

Diener v. McBeth (In re Diener), 483 B.R. 196, 206 n.6 (9th Cir. BAP 2012) (internal citation omitted).

8

if it contains a complete act of adjudication, that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter." Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1120 (9th Cir. 2007) (citations and internal quotation marks omitted). This circuit "follow[s] a pragmatic approach to finality in bankruptcy – a complete act of adjudication need not end the entire case, but need only end any of the interim disputes from which an appeal would lie." Id. at 1121 (citation and internal quotation marks omitted). We have noted that bankruptcy law's "flexible finality" principle "focuses upon whether the order affects substantive rights and finally determines a discrete issue." Belli v. Temkin (In re Belli), 268 B.R. 851, 854 (9th Cir. BAP 2001) (citations omitted).

Further, this Panel has repeatedly stated that "[a] minute entry may constitute a dispositive order for notice of appeal purposes if it: (1) states that it is an order; (2) is mailed to counsel; (3) is signed by the clerk who prepared it; and (4) is entered on the docket sheet." Mullen v. Hamlin (In re Hamlin), 465 B.R. 863, 868 (9th Cir. BAP 2012) (citing In re Lund, 202 B.R. at 130).

The Minutes satisfy all of these requirements.

First, the Minutes are framed as an order. The court stated:

IT IS ORDERED MS. NEUMAN SHALL HAVE UNTIL OCTOBER 17, 2014 TO FILE A CLAIM AGAINST MR. KRENZ; FAILING WHICH THE CLAIM WILL BE CONSIDERED A LATE FILED CLAIM.

IT IS FURTHER ORDERED OVERRULING THE OBJECTION TO THE AMENDED SCHEDULES FILED BY MS. NEUMAN.

9

This language disposes of the objection under § 523(a)(3) and "clearly evidence[s] the bankruptcy judge's intention that it be the court's final act in the matter." See In re Hamlin, 465 B.R. at 868.

Second, Ms. Neuman does not deny that she received a copy of the Minutes.

Third, an electronically filed document by the court does not need to contain the judge's or clerk's signature to be official and binding. See Local Rule 5005-2(j) ("Any order or other court-issued document filed electronically without the original signature of a judge or clerk has the same force and effect as if the judge or clerk had signed a paper copy of such order or other court-issued document and it had been entered on the docket nonelectronically.").

Finally, the Minutes were entered on the bankruptcy court's docket.

Accordingly, Ms. Neuman's appeal of the court's September 25, 2014 ruling is untimely and not properly before us on appeal.

**2. The court did not violate Ms. Neuman's due process rights when it denied her objection to Mr. Krenz's amendment.**

Even if Ms. Neuman's appeal was timely, we would affirm the Minutes.

**a. Due process requires notice and an opportunity to be heard.**

Generally speaking, a court must give sufficient notice of a pending proceeding and the opportunity for interested parties to be heard. See Tennant v. Rojas (In re Tennant), 318 B.R. 860,

10

870 (9th Cir. BAP 2004) ("the concept of procedural due process requires a notice and an opportunity to be heard"). According to the United States Supreme Court:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.

Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (citations omitted).

"[T]he concept of notice and a hearing is flexible and depends on what is appropriate in the particular circumstance." In re Tennant, 318 B.R. at 870 (citing Great Pac. Money Markets, Inc. v. Krueger (In re Krueger), 88 B.R. 238, 241 (9th Cir. BAP 1988)). For example, a procedure may be "perfectly appropriate" if it "notifies the debtor of the deficiencies of his petition and dismisses the case sua sponte without further notice and a hearing when the debtor fails to file the required forms within a deadline." Id. at 870-71 (citing Minkes v. LaBarge (In re Minkes), 237 B.R. 476, 478–79 (8th Cir. BAP 1999)).

### b. Ms. Neuman received both notice and an opportunity to be heard.

In the present case, Ms. Neuman admitted that she had actual notice of Mr. Krenz's bankruptcy when he filed his petition in 2010. As a creditor, she was obligated to file a claim and protect her rights when she learned of Mr. Krenz's bankruptcy. See Lompa v. Price (In re Price), 79 B.R. 888, 893 (9th Cir. BAP

11

1987) (holding "that actual notice of the bankruptcy proceeding is sufficient to place a creditor on inquiry notice of the running of the bar date and satisfies due process requirements"), aff'd, 871 F.2d 97 (9th Cir. 1989) ("In light of our determination that the appellant was on notice that Price had filed for bankruptcy relief, the appellant's due process argument is without merit."); § 523(a)(3) (unscheduled debts are nondischargeable, "unless such creditor had notice or actual knowledge of the case in time for such timely filing"). The court did not deny her due process when she knew of Mr. Krenz's bankruptcy and took no action to assert her own rights.

Ms. Neuman attempted to explain her inaction by arguing that she thought that the bankruptcy proceeding only concerned Mr. Krenz's business dealings. This assumption was unwarranted and does not relieve her of her obligation to ascertain the effect of the bankruptcy case on her rights.

Despite Ms. Neuman's inaction, the bankruptcy court accommodated each of her late requests for relief and ensured that she was heard regarding both her objection to the amendment and her objection to discharge. The court bent over backwards to ensure that her procedural and due process rights were protected. Accordingly, Ms. Neuman was not denied due process.

### c. Ms. Neuman fails to demonstrate any prejudice arising from the alleged due process violation.

Furthermore, even if Ms. Neuman was denied due process (which she was not), she does not explain how she was prejudiced.

Even in cases where a bankruptcy court errs by failing to provide adequate notice and hearing, the appellant must show

12

prejudice from the procedural deficiencies.  See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776-77 (9th Cir. 2008) ("Because there is no reason to think that, given appropriate notice and a hearing, Rosson would have said anything that could have made a difference, Rosson was not prejudiced by any procedural deficiency.").  In Rosson, the Ninth Circuit held that the debtor was deprived of a meaningful opportunity to be heard; nevertheless, because he could "show no prejudice arising from the defective process afforded him[,]" the bankruptcy court properly converted the case to chapter 7.  Id.; see City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.), 22 F.3d 954, 959 (9th Cir. 1994) (rejecting a due process claim for lack of prejudice where the debtor could not show that any different or additional argument would have been presented if the bankruptcy court had timely approved the petition for new counsel).

Here, Ms. Neuman has not articulated what she could have said or done that would have changed the outcome if she had gotten timely, formal notice of the bankruptcy filing.  She was not deprived of the right to file a timely proof of claim; in the Minutes, the court extended the time for her to file a claim, and she filed a claim by that date.  She might have objected to the confirmation of Mr. Krenz's plan, but she has not stated any argument that might have defeated the confirmation of the plan.  She might have objected to Mr. Krenz's discharge earlier, but the bankruptcy court thoroughly and carefully considered her objections at a later date; there is no reason to believe that the outcome would have been different if she had objected

13

earlier. In other words, we fail to see how Ms. Neuman "would have said anything that could have made a difference." See In re Rosson, 545 F.3d at 777.

Moreover, Ms. Neuman actually **benefitted** from Mr. Krenz's failure to include the loan obligation in his schedules. While non-priority unsecured creditors (including Ms. Neuman) received only a 1.65 percent disbursement under the plan, Ms. Neuman actually received much more. From the time Mr. Krenz filed bankruptcy in February 2010 until the date he stopped paying Ms. Neuman in January 2014, he paid her approximately $28,800. This is far more than the pro rata share received by any other unsecured creditor. Thus, Ms. Neuman actually received more than she would have had she been included as a creditor from the inception of the bankruptcy.

We therefore hold that the court did not deny Ms. Neuman due process when it permitted Mr. Krenz to amend his schedules and allowed Ms. Neuman to file her proof of claim.

**B.  The bankruptcy court did not err in granting a judgment on partial findings in favor of Mr. Krenz on Ms. Neuman's objection to discharge.**

Ms. Neuman next argues that the bankruptcy court erred when it overruled her objection to discharge based on Mr. Krenz's alleged fraud and manipulation. However, her failure to provide us with a full transcript of the Evidentiary Hearing precludes our informed review of the alleged error.

It is Ms. Neuman's duty to provide the Panel with a complete record on appeal. See Welther v. Donell (In re Oakmore Ranch Mgmt.), 337 B.R. 222, 226 (9th Cir. BAP 2006) (the appellant "bears the burden of presenting a complete record"). "The

14

settled rule on transcripts in particular is that failure to provide a sufficient transcript may, but need not, result in dismissal or summary affirmance and that the appellate court has discretion to disregard the defect and decide the appeal on the merits." Kyle v. Dye (In re Kyle), 317 B.R. 390, 393 (9th Cir. BAP 2004), aff'd, 170 F. App'x 457 (9th Cir. 2006). But see Ehrenberg v. Cal. State Univ. (In re Beachport Entm't), 396 F.3d 1083, 1087 (9th Cir. 2005) ("Although summary dismissal is within the BAP's discretion, it 'should first consider whether informed review is possible in light of what record has been provided.'").

Ms. Neuman has provided us with only a partial transcript of the Evidentiary Hearing, which includes only the court's ruling **after** the parties had presented their evidence. Without a full transcript of the Evidentiary Hearing, we cannot review the evidence and argument presented by the parties during the Evidentiary Hearing;[4] we therefore do not find any error with the court's ruling.

### CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's decisions to allow Mr. Krenz to amend his schedules, permit Ms. Neuman to file a late proof of claim, and deny Ms. Neuman's objection to discharge.

---

[4] Similarly, Ms. Neuman included in her excerpts of record a number of purported exhibits. However, it is unclear whether these documents were actually offered and admitted into evidence at the Evidentiary Hearing.

15